IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY ANDERSON, | : | Civil No. 1:22-CV-00226 |
| Plaintiff, | : | |
| v. | : | |
| K. KAUFFMAN, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are cross motions for summary judgment filed by Rodney Anderson ("Plaintiff") and the remaining Defendants K. Kauffman ("Kauffman") and C. Neri ("Neri"). (Docs. 94, 98.) Plaintiff also filed a document titled motion in opposition to the Defendants' 3-18-24 filed motion. (Doc. 113.) While this document is docketed as a motion, it appears to be further responsive briefing, and makes no separate request of the court. For the following reasons, the court will grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, term the motion in opposition, grant judgment in favor of Defendants, and close the case.

## **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a complaint on February 15, 2022, naming thirteen defendants: (1) Kauffman, the superintendent of State Correctional Institution ("SCI-Huntingdon") until July 26, 2021; (2) J. Rivello, the current

superintendent of SCI-Huntingdon; (3) Neri, the department psychologist at SCI-Huntingdon; (4) Ms. Cousins ("Cousins"), the psychiatrist at SCI-Huntingdon; (5) Ms. Connie Green, the grievance coordinator at SCI-Huntingdon; (6) Ms. Wakefield; (7) Mr. J. Wetzel, the Secretary of Corrections for the Pennsylvania Department of Corrections; (8) M. Murtha, the librarian for the law library; (9) C. Hammon, the librarian at the law library; (10) Ms. M. Yost, the unit manager at SCI-Huntingdon; (11) Ms. Hicks-Kern, the employment officer; (12) Ms. Pattersons, the phone coordinator at SCI-Huntingdon; and (13) Mel, a nurse at the medical department. (Doc. 1.)

Plaintiff raised claims against Defendants under the Americans with Disability Act ("ADA"), the Rehabilitation Act ("RA"), the First Amendment, the Sixth Amendment, the Eighth Amendment, and the Fourteenth Amendment. (*Id.*) On February 7, 2023, this court entered an order granting Defendants' motions to dismiss. (Doc. 46.) Plaintiff was granted leave to file an amended complaint. (*Id.*)

On March 15, 2023, the court received Plaintiff's amended complaint. (Doc. 47.) The amended complaint, like the original complaint, brought cruel and unusual punishment and deliberate indifference claims under the Eighth Amendment, due process claims under the Fourteenth Amendment, RA claims,

and ADA claims. (*Id.*) Plaintiff only named Defendants Cousins, Neri, and Kauffman as defendants. (*Id.*)

On March 17, 2023, Defendants Kauffman and Neri filed a waiver of reply to the amended complaint. (Doc. 48.)

On March 29, 2023, Defendant Cousins filed a motion to dismiss the claims against her in the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 54.) Following briefing, the court granted Defendant Cousins' motion to dismiss, dismissed all claims against her with prejudice, and terminated her as a party to the action. (Docs. 69, 70.)

Fact discovery then proceeded for the remaining parties. (Doc. 52.) On December 26, 2023, Defendants Kauffman and Neri filed a motion for summary judgment, brief in support, and statement of material facts. (Docs. 94, 95, 96.) On February 15, 2024, Plaintiff filed a brief in opposition to Defendants' motion. (Doc. 108.)

On December 29, 2023, Plaintiff filed a motion for summary judgment and brief in support. (Docs. 98, 99.) Defendants Kauffman and Neri filed a brief in opposition on January 12, 2024. (Doc. 100.) On February 15, 2024, Plaintiff filed another brief in support of his motion for summary judgment. (Doc. 107.) On March 4, 2024, Plaintiff filed a reply brief and a response to Defendants' brief in opposition. (Docs. 110, 111.) On March 18, 2024, Defendants Kauffman and Neri

filed a response to Plaintiff's reply. (Doc. 112.) On April 5, 2024, Plaintiff filed a motion in opposition to Defendant's March 18, 2024 filed motion and brief in support. (Docs. 113, 114.) However, this April 5, 2024 filing appears to be additional briefing and does not make a new request of the court. (*Id.*)

The court will now address the pending cross-motions for summary judgment.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper because the alleged conduct took place at SCI-Huntingdon, which is located in Cumberland County and is located in this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A

dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that

there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MATERIAL FACTS

Plaintiff is an inmate currently incarcerated at SCI-Huntingdon.  (Doc. 96, p. 1; Doc. 97-2, p. 5.)[1]  Defendant Kauffman is the former Superintendent at SCI-Huntingdon, and Defendant Neri is the former psychologist at SCI-Huntingdon. (Doc. 96, p. 1; Doc. 47, p. 6–9.)

Plaintiff has been diagnosed with bipolar disorder.  (Doc. 96, p. 4; Doc. 97-2, p. 7; Doc. 97-8, p. 3.)  He was seen on February 11, 2020 by Defendant Neri and

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF heading.

his assessment showed his affect, insight, perceptions, memory, orientation, and impairment were within normal limits. (Doc. 97-8, pp. 2–3.) Plaintiff was seen again on March 2, 2020 by Nurse Practitioner Cousins. (*Id*., pp. 4–8.) Plaintiff was advised of the sick call process. (*Id*., p. 8.) On March 10, 2020, Plaintiff was seen by Defendant Neri for a routine mental health contact, denied any significant mental health concerns, and "respectfully declined to attend PRT." (*Id*., pp. 9, 12.)

On April 23, 2020, Plaintiff was seen by Defendant Neri "cellside due to COVID19 institutional lockdown. [Plaintiff] did not request an out of cell session, but was advised of how to contact this PSSC if needed." (*Id*., p. 16.) Plaintiff's affect, insight, perceptions, thinking, memory, orientation and impairment were within normal limits. (*Id*., p. 17.)

On May 15, 2020, Defendant Neri "mailed down a information transmittal to inmate for a wellness check," and "[t]he letter inquired as to how the inmate has been coping. In addition an activity packet was attached on this date. The activity packet contained puzzles, dot to dots, and various deep breath techniques." (*Id*., p. 18.)

On May 21, 2020, Dr. Tanuja Reddy entered a note that Plaintiff "is unable to be seen due to the current statewide quarantine directive," the chart was reviewed, and Plaintiff "appears compliant [with] meds." (*Id*., p. 19.) His medications were renewed. (*Id*.)

On May 29, 2020, Defendant Neri entered a chart note stating the following:

> Inmate responded to the information transmittal sent to him regarding monthly psychology contact. Mr. Anderson reported stressful situation primarily surrounding his cellmate and an increase in anxiety. He added that he has effectively coped thus far, but finds it to be a struggle. Supportive correspondence continued to be offered despite COVID-19 movements restrictions.

(*Id.*, p. 23.)

On June 4, 2020, Defendant Neri again mailed Plaintiff "informational transmittal" for a wellness check: "The letter inquired as to how the inmate has been coping. In addition an activity packet was attached on this date." (*Id.*, p. 24.)

On July 2, 2020, provider Trist Lalli mailed Plaintiff an "information transmittal" for a 30-day wellness check, and the letter inquired as to how Plaintiff had been coping and if he had any concerns. (*Id.*, p. 25.) Plaintiff was instructed to return the packet by July 7, 2020. (*Id.*)

The medical records then demonstrate that Plaintiff was again seen in person by Trista Lalli on July 24, 2020 and requested the packets previously provided. (Doc. 97-7; Doc. 111-1, p. 6.)

In his deposition, Plaintiff initially denied seeing Defendant Neri in March or April of 2020 and denied receiving packages from medical providers in May and June of 2020. (Doc. 97-2, pp. 7–8.) However, upon further questioning, he admitted to seeing Defendant Neri in the hallway in March of 2020. (*Id.*, p. 8.) He added that he could not recall having a conversation with Defendant Neri in April

8

of 2020.  (*Id.*, p. 11.)  He also admitted to receiving a packet of paperwork in May of 2020 that included puzzles, dot to dots, breathing skills, and coping skills, but stated they did not include the "information transmittal."  (*Id.*, p. 9.)  When asked about responding to the information transmittal sent to him in May, Plaintiff did not deny that he returned the information transmittal, but stated the following:

> This is the information transmittal that I requested to have a copy of because she said that – she said she saw me on this date.  So if she just said that, I sent her the paper that she said that she sent to me, so I requested a copy of it because I kept a copy of all the information transmittals that – she sent me one, I made a copy of it, and then I filled it out and sent it back.

(*Id.*)  He then stated "So I don't have one that's for May or June.  So the first one that I actually have is 7/2/20.  So I only received them from Lalli.  I never received them from anybody else." (*Id.*)  When asked if thought Defendant Neri would make that up, he stated "No, it's the same reason I got – they why the reason I would be asking for a copy of it is to see that, you know what I mean, it's my handwriting.  It's my signature.  It's my – I filled out the information that was on there."  (*Id.*)

## DISCUSSION

Defendants Kauffman and Neri initially allege that Plaintiff failed to exhaust his administrative remedies prior to filing the current action, and this appears to be the most contested issue in the briefings.  (Doc. 95.)  However, without determining whether the Plaintiff properly exhausted his administrative remedies,

9

the court finds that summary judgment can be entered in Defendants' favor on the merits of each claim Plaintiff raises.

**A. Summary Judgment Will Be Granted to Defendants on the ADA/RA Claims.**

Plaintiff attempts to bring a claim against Defendant Cousins under the ADA and RA. (Doc. 47, pp. 7–8.) First, the court will address Plaintiff's claim under Title II of the ADA. The court acknowledges that the Third Circuit has not directly answered the question of whether there can be individual liability under Title II of the ADA. *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]"). However, nearly all of the Third Circuit's decisions regarding personal liability under the ADA's various titles point toward the absence of individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j

10

permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants did not own, lease, or operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants"). Additionally, other circuit courts of appeals have directly addressed the issue and found no individual liability under Title II of the ADA. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*). Therefore, the court will follow the guidance in the nonprecedential opinions issued by the Third Circuit and the non-binding precedent from other Circuits, and find that there is no individual liability Title II of the ADA. Therefore, judgment will be entered in favor of Defendants on the ADA claim for this reason.

Second, the Third Circuit has made clear that individual defendants are not liable under the RA. *Emerson*, 296 F.3d at 189. Therefore, judgment will be entered in favor of Defendants on the RA claim.

### B. Summary Judgment Will Be Granted to Defendants on the Eighth Amendment Claims.

Plaintiff brings Eighth Amendment cruel and unusual punishment and deliberate indifference to a serious medical need claims against both Defendants Kauffman and Neri. (Doc. 47, pp. 6–8.)

#### 1. Cruel and Unusual Punishment

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"

12

*Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)). Such a claim contains two requirements: an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner asserting a claim that the conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45.

    Here, nothing Plaintiff has alleged raises the necessary elements of an Eighth Amendment claim. Plaintiff alleges that the COVID-19 restrictions at SCI-Huntingdon amounted to "cruel and unusual punishment to let a mental health patient suffer mental for over 120 days" without treatment. (Doc. 47, p. 7.) However, Defendants have presented evidence that treatment was provided from March of 2020 through July of 2020. This included direct treatment by Defendant Neri on March 10, 2020 and April 24, 2020. (Docs. 97-7, 97-8.) Beginning in May of 2020, the treatment was not in person due to movement restrictions, but information transmittal and activity packets were provided on May 18, 2020, June 4, 2020, and July 2, 2020. (*Id.*) The court acknowledges that Plaintiff initially refuted this evidence in his deposition, but later admitted seeing Defendant Neri in

the hallway in March of 2020 and receiving packets of paperwork in May of 2020. (Docs. 97-2; 97-7; 97-8.)  Furthermore, Plaintiff has failed to provide any evidence demonstrating that the treatment dates provided in the medical records did not occur.  Instead, he stated he did not recall and relied on the lack of his own record keeping as evidence.  In his responsive briefing, he appears to change his argument from there being no information transmittals provided in May and June of 2020 to the assertion that he did contact the provider through an information transmittal form, and her only response was to send him another information transmittal form four days later.  (Doc. 113, p. 1.)

Therefore, the court finds that Defendants have met their initial burden of setting forth what they believe demonstrates the absence of a genuine issue of material fact.  Plaintiff has failed to set forth specific facts demonstrating a genuine issue for trial, but instead makes mere assertions that the medical records are not correct and later recants these assertions.

The evidence submitted by Defendants demonstrates that Plaintiff did not go a full 120 days without treatment.  Instead, it demonstrates that he went 92 days without in person treatment, from April 23, 2020 to July 24, 2020, and supportive care was provided through the mailing of packets including information transmittals and other materials on May 15, 2020, June 2, 2020, and July 2, 2020. (Doc. 97-8.)  Additionally, it shows that he continued to be monitored as providers

14

entered chart notes in Plaintiff's medical files demonstrating he was compliant with his medications. (*Id.*, pp. 19, 23.) Therefore, Plaintiff cannot establish that prison officials deprived him of the minimal civilized measure of life's necessities. As such, the court will enter judgment in favor of Defendants on the cruel and unusual punishment claim.

### 2. Deliberate Indifference

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for deliberate indifference, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)).  Mere disagreement over proper treatment does not state a claim upon which relief can be granted.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

### i.  Defendant Kauffman

Plaintiff points to Defendant Kaufman's involvement in the grievance review process and the fact that he did not create a space for psychiatrists and psychologists to meet with patients during the COVID-19 restrictions as evidence of his deliberate indifference.  (Doc. 47, p. 8.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a

person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988) (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in review and denial of grievance insufficient to establish personal involvement).

    The amended complaint alleges that "Kauffman answered the plaintiff's grievances as the 2nd level of the grievance system or appeal officer of the grievance system. This made him personally involved because he now knows the issues of the plaintiff and he has a chance to resolve those issues." (Doc. 17, p. 8.) However, in accord with *Rode* and *Dooley*, such a claim is insufficient to establish personal involvement, and cannot succeed.

As to Defendant Kaufman's failure to create a location for mental health treatment to continue, Defendants have provided evidence that treatment continued in person through April of 2020 and began a series of correspondences from May into July of 2020.  (Docs. 97-7, 97-8.)  Plaintiff was seen again in person on July 24, 2020.  (Doc. 97-7.)  Therefore, Plaintiff is arguing that he merely disagrees with how the treatment was provided.  This fails to rise to the level of an Eighth Amendment claim.  Therefore, judgment will be entered in favor of Defendant Kauffman on the deliberate indifference claim.

### ii.  Defendant Neri

Similarly, Defendants have presented evidence that Plaintiff continued to receive treatment from March through July of 2020.  This included direct treatment by Defendant Neri on March 10, 2020 and April 24, 2020.  (Docs. 97-7, 97-8.)  Beginning in May of 2020, the treatment was not in person due to COVID-19 movement restrictions, but information transmittal and activity packets were provided on May 18, 2020, June 4, 2020, and July 2, 2020.  (*Id*.)  Again, Plaintiff is merely disagreeing with the treatment provided.  This is insufficient to rise to the level of an Eighth Amendment claim.  Therefore, judgment will be entered in Defendant Neri's favor.

### C. Summary Judgment Will Be Granted to Defendant on the Fourteenth Amendment Claim.

Plaintiff brings a Fourteenth Amendment equal protection claim against Defendant Kauffman. (Doc. 47, pp. 8–9.)

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that (1) he is a member of a protected class, and (2) he was treated differently from similarly situated inmates. *See id.* In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

The amended complaint includes the allegation that Defendant Kauffman "knew that the plaintiff and other mental health [inmates] were not being provided the same mental health services provided to the inmates housed [in] the CB unit/RTU/SNU." (Doc. 47, p. 8.) However, in doing so, Plaintiff failed to allege that he was a member of a protected class. (*Id.*) First, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Second, the Supreme Court has held that mental impairment is not a quasi-suspect classification. *See City of*

19

*Cleburne*, 473 U.S. at 442–43.  Therefore, the equal protection claim cannot survive summary judgment and the court will enter judgment in favor of Defendant Kaufman.

## CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied. Judgment will be granted in favor of Defendants, the Clerk of Court will term Plaintiff's pending motion, and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

September 19, 2024